IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CNET NETWORKS, INC. SHAREHOLDER DERIVATIVE LITIGATION. _____/ <br><br> This Document Relates To: <br><br>     All Actions. _____/ | No. C 06-03817 WHA <br><br> **ORDER GRANTING DEFENDANT CNET'S MOTION TO DISMISS** |

## INTRODUCTION

In this shareholder derivative action, nominal defendant CNET Networks, Inc., and individual defendants separately move to dismiss plaintiffs' third amended complaint. Because plaintiffs have failed to properly allege demand futility, nominal defendant's motion is **GRANTED**. It is, therefore, unnecessary to reach the merits of the individual defendants' motions to dismiss.

## STATEMENT

This action was filed on June 19, 2006, alleging that certain current and former officers and directors at CNET caused several backdated stock options to be granted to themselves or others. A detailed account of the allegations in the complaint and the parties to this action was recited in a previous order dated April 11, 2007 (Dkt. 149), and need not be re-stated. Defendants then moved to fully dismiss the complaint. Instead of filing an opposition to defendants' motion, plaintiffs filed an amended complaint. After a hearing was held to discuss how the case should proceed, discovery was stayed pending a request by plaintiff to compel a special committee report. Plaintiffs were then ordered to file a second amended complaint by January 25, 2007. This deadline was later extended to February 12, 2007. The Court warned

plaintiffs that they should be "prepared to stand or fall by [the second amended complaint]" (*id.* at 29). Plaintiffs then filed their second amended complaint. Defendant subsequently moved to dismiss on the ground that plaintiffs had failed to allege demand futility. The motion was granted.

Plaintiffs then filed a motion for reconsideration. The motion was denied, but plaintiffs were given leave to file yet another amended complaint. At this time, it was discovered that plaintiffs would benefit from inspecting CNET's books and records in making any future amendments to the complaint. Accordingly, the case was stayed pending an action brought in Delaware court under Delaware General Corporation Law Section 220 to inspect CNET's books and records.

The Delaware litigation was resolved on November 21, 2007, and a case management conference herein was held on November 28. At the conference, defendants represented that they would require seven to ten calender days in order to fully comply with the Delaware order regarding production of the books and records. The Court then ordered that plaintiffs would have twenty calender days from defendant's completion of production to file their third amended complaint. Months then passed. On April 2, having not received any third amended complaint from plaintiffs, the Court inquired why. The parties then informed the Court that defendants had ceased producing the remaining documents pursuant to the Delaware order due to substantial progress that was made in ongoing settlement discussions. An order was then issued advising counsel that any settlement proposal would be premature given the Court's inability to evaluate what claims were actually viable and given that it had not yet even been established that plaintiffs had standing to negotiate on behalf of the corporation (Dkt. 238). The order also set a deadline for plaintiffs to file their third amended complaint, April 24, and a briefing schedule for any subsequent motions to dismiss. This order now follows.

\*         \*         \*

As with the prior complaints, plaintiffs again allege that various employees at CNET were involved in approving, issuing, and receiving backdated stock options. In particular, plaintiffs claim that five specific stock option grants made on the following dates were backdated: (1) June 3, 1998; (2) April 17, 2000; (3) October 18, 2000; (4) October 8, 2001; and

2

(5) June 24, 2003 (TAC ¶¶ 47–48, 52, 58–59, 71, and 88–89). Plaintiffs do not purport to have made a demand on CNET's board prior to the filing of this suit in June 2006 or before the third amended complaint was filed in April 2008. Rather, plaintiffs maintain that demand was excused because it would have been futile.

In support of its futility contention, the third amended complaint squarely focuses on the composition of the board at the time the first complaint was filed — June 19, 2006 (*id.* at 194–242). At that time, CNET's board consisted of six members: Shelby Bonnie, John Colligan, Peter Currie, Jarl Mohn, Elizabeth Nelson, and Eric Robison. Plaintiffs allege that three of these board members — Bonnie, Colligan, and Robison — granted and/or received backdated options and were thereby unable to exercise independent business judgment (*id.* at ¶ 199). The remaining three board members — Nelson, Mohn, and Currie — became board members after the last stock option grant that plaintiffs allege was backdated. Plaintiffs nonetheless allege that demand would have also been futile as to these three board members because CNET allegedly made various SEC filings containing inaccurate financial and business information during their tenures (*id.* at ¶ 238).

Significantly, the composition of CNET's board has changed from the date the first complaint was filed and the date the third amended complaint was filed. By the time the third amended complaint was filed one director had resigned and three new directors joined the board. The board thus consisted of eight members as of the filing date of the third amended complaint: Neil Ashe, Susanne Lyons, Mark Rosenthal, John Colligan, Eric Robison, Jarl Mohn, Elizabeth Nelson, and Peter Currie (Def. Req. Jud. Not. Exh. D). Lyons and Rosenthal, neither of whom had any affiliation with CNET, joined the board in April 2007. The third amended complaint makes no mention of Lyons or Rosenthal. Plaintiffs do allege that Ashe — Bonnie's successor as CEO — received backdated options as part of the June 24, 2003, grant, but do not allege that demand was futile as to Ashe.

## ANALYSIS

### 1. LEGAL STANDARD.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. The Supreme Court has recently explained that "[w]hile a complaint attacked

3

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007) (citations and alterations omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Although materials outside of the pleadings should not be considered, a district court may consider all materials properly submitted as part of the complaint, such as exhibits. *Hal Roach Studios v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (1990).[1]

In arguing its motion to dismiss, defendants ask the Court to take judicial notice of SEC filings and public documents. "Under the incorporation by reference doctrine, we also consider documents submitted by Defendants that were referenced in the complaint and whose authenticity has not been questioned." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). For other publicly filed documents, "[a] court may take judicial notice of public filings when adjudicating a motion to dismiss a complaint for failure to state a claim upon which relief can be granted." *In re Calpine Sec. Litig.*, 288 F.Supp.2d 1054, 1076 (N.D. Cal.2003) (Armstrong, J.). This order therefore finds that the documents referenced in plaintiffs' complaint and the SEC filings are proper subjects of judicial notice.

**2.     DEMAND FUTILITY HAS NOT ADEQUATELY BEEN PLED.**

A shareholder bringing a derivative action must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority . . . and the reasons for plaintiff's failure to obtain the action or for not making the effort." FRCP 23.1. "A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999). "A trial court need not blindly

---

[1] Unless otherwise stated, all internal citations are omitted from quoted authorities in this order.

accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences." *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988).

Here, no demand was made. Rather, plaintiffs contend that compliance with the demand requirement was excused because such demand would have been futile. "[A] court that is entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the state of incorporation." *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 108–09 (1991). CNET was incorporated in Delaware, so Delaware law applies to this point.

Delaware courts apply two tests for determining when demand is excused. If a derivative suit challenges an affirmative decision by a board of directors, then the plaintiff is excused from making a demand if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). But where the underlying business decisions that are being challenged were not made by a majority of the board at the time the derivative complaint was filed, a different test should be applied. *See Rales v. Blasband*, 634 A.2d 927, 933–34 (Del. 1993). In that case, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales,* 634 A.2d at 934. To prove that demand would have been futile, the plaintiff must show that a majority of directors were not independent or disinterested. If four members of an eight-member board are not independent or disinterested, demand is excused. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 (Del. 2004).

For purposes of this motion, it appears as if plaintiffs concede that the complaint does not adequately allege futility with respect to the composition of the board as of April 24, 2008 — the date the third amended complaint was filed. Nowhere in their briefing or the third amended complaint do plaintiffs allege that demand to the board as of April 24 would have been futile. No attempt is even made to show that at least half of the now eight-person board were interested or unable to exercise independent judgment. The only dispute is thus whether

5

demand futility should be examined at the time the action was commenced or at the time an amended complaint was filed.

The Supreme Court of Delaware has already directly addressed this question. In *Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006), the plaintiff's original derivative complaint was dismissed by the chancery court. The plaintiff then filed a second amended complaint. At the time the original complaint was filed the defendant had an eleven-member board. By the time the second amended complaint was filed, however, the defendant's board consisted of thirteen members. The plaintiff alleged that demand had been excused because at the time the original complaint was filed, such demand would have been futile. The chancery court found that demand had been excused based on the composition of the board at the time the original complaint was filed. The Supreme Court of Delaware in *Braddock*, 906 A.2d at 786, reversed, stating (emphasis added):

> We hold that, when an amended derivative complaint is filed, the existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry only as to derivative claims in the amended complaint that are not already validly in litigation. . . . A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. It constitutes a judicial determination that the original complaint was either not well pleaded as a derivative action or did not satisfy the legal test for demand excusal. Following such a dismissal, for purposes of a Rule 23.1 demand inquiry, the complaint is not validly in litigation. *Consequently, where a complaint is amended with permission following a dismissal without prejudice, even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed.* After the plaintiff's first amended complaint was dismissed in its entirety, there were no claims 'validly in litigation.' Consequently, the Court of Chancery should have assessed demand futility regarding Count I of the second amended complaint with regard to the board that was in place at the time that amendment was filed. Where, as in this proceeding, a plaintiff's complaint has been dismissed and the plaintiff is given leave to file an amended complaint, we hold that the plaintiff must make a demand on the board of directors in place at that time the amended complaint is filed or demonstrate that demand is legally excused as to that board.

6

1   This holding supports the fundamental policy that boards of directors be vested "with the power
2   to manage the business affairs of corporations." *Id*. at 784.

3   Plaintiffs contend that the rule set forth in *Braddock* should not be applied here for three
4   distinct reasons. *First*, plaintiffs argue that unlike courts in Delaware, federal courts assess
5   demand futility as of the date the action was commenced. According to plaintiffs, the rule set
6   forth in *Braddock* was merely "procedural" — *i.e.*, the standards applied by Delaware courts
7   under Delaware's Rule 23.1 are procedurally different than the Rule 23.1 applied by federal
8   courts. The Ninth Circuit has yet to directly address this issue. In fact, this Court has been
9   unable to find any federal court decision that squarely speaks to the merits of whether
10  *Braddock* was merely a procedural rule applied under Delaware law. The decisions relied on
11  by plaintiffs are all inapposite. With the exception of one, none directly addressed the issue of
12  whether futility should be assessed with respect to an earlier or later board after the original
13  complaint was dismissed. A significant portion did not even apply Delaware law. The only
14  federal decision that did address this issue applied *Braddock* by stipulation of the parties.[2]

15  Having carefully reviewed the relevant case law and argument submitted by the parties,
16  this order finds that the rule set forth in *Braddock* is *substantive* and governing here. The
17  Supreme Court in *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96 (1991), clearly
18  stated, "the function of the demand doctrine in delimiting the respective powers of the
19  individual shareholder and of the directors to control corporate litigation clearly is a matter of
20  'substance,' not 'procedure.'" The *Braddock* decision specifically recognized this principle.
21  *See Braddock*, 906 A.2d at 784 ("The demand requirement of Rule 23.1 is a substantive right
22  designed to give a corporation the opportunity to rectify an alleged wrong without litigation,
23  and to control any litigation which does arise.")

24  The undersigned is mindful that the *Braddock* rule could lend itself to manipulation by
25  controlling interests in the interim between dismissal of a complaint and the filing of an

---

[2] In *Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, 2008 WL 878424 (N.D. Cal. 2008), Judge Ronald Whyte was faced with this precise issue, but he never addressed the merits. As stated in the decision, "[t]he parties do not dispute that the board of directors to whom demand should be directed is the board in place at the time the [second amended complaint] was filed. *See Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del.2006)." *Id*. at *6 n.3.

United States District Court
For the Northern District of California

amended complaint. But, as stated, Delaware's Rule 23.1 regarding demand compliance is a substantive rule that must be applied by federal courts. In addition, under Delaware law the danger of manipulation after a derivative complaint has been filed already exists. When the composition of the board changes during the pendency of litigation and "is comprised of new directors who are under no personal conflict with respect to prosecution of a pending derivative claim, the board may cause the corporation to act in a number of ways with respect to that litigation." *Harris v. Carter*, 582 A.2d 222, 230 (Del. 1990). The new board may: (1) move the court to take over the litigation; (2) move, after deliberation, to dismiss the complaint as not in the company's best interest; or (3) allow the named plaintiff and his counsel to carry the litigation forward. *Id*. at 231. Accordingly, this order rejects plaintiffs' argument that the *Braddock* rule was merely "procedural."

Perhaps in a transparent instance of manipulation, a court might see through a board-packing scheme and excuse demand in the exercise of its equity power, but here there is no indication of such manipulation. The board composition simply changed while a lengthy stay was in place to allow plaintiffs to pursue a records demand in Delaware.

*Second*, plaintiffs maintain *Braddock* does not apply because unless new claims are asserted in an amended complaint, derivative plaintiffs are not required to allege demand futility as to the new board. Plaintiffs primarily rely on *Stiegele ex rel. Viisage Tech., Inc. v. Bailey*, 2007 WL 4197496 (D. Mass 2007). Plaintiffs' reliance is once again misplaced. In *Stiegele*, the plaintiff's complaint had never previously been dismissed. The plaintiff was merely adding new claims based on the facts set forth in his original complaint. *Id*. at *4. Here, plaintiffs' last complaint was fully dismissed. In addition, as already discussed, "even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed." *Braddock*, 906 A.2d at 786.

*Third*, plaintiffs argue that the third amended complaint relates back to the original complaint for demand futility purposes. In support of their argument, plaintiffs confusingly argue that the dismissal of the original complaint was not a final judgment as specified under

Ninth Circuit law. As discussed above, however, Ninth Circuit law is not controlling on this issue — Delaware law *is*. *Braddock* in turn makes the question of "final judgment" irrelevant. "A complaint that is dismissed without prejudice but with express leave to amend *is nevertheless a dismissed complaint*." *Ibid.* (emphasis added). This is true no matter what tag was given by the court when the complaint was dismissed. Accordingly, regardless of whether a "final judgment" was issued, the holding of *Braddock* governs and must therefore be applied.

Here, the composition of CNET's board significantly changed during the time between the filing of the original complaint and the third amended complaint. Plaintiffs must show that demand would have been futile with respect to the board as composed at the time the third amended complaint was filed — *not* at the time the original complaint was filed. At that time, the board consisted of eight people (Def. Req. Jud. Not. Exh. D). Plaintiffs must therefore show at a minimum that four of those members were interested or unable to exercise independent judgment. At most, plaintiffs have only made such a showing with respect to three members. This is not enough under *Braddock*.

## CONCLUSION

For the foregoing reasons, plaintiffs' third amended complaint is hereby **DISMISSED**. Plaintiffs have been given ample opportunity and time to adequately plead their claims. Indeed, nearly an extra year was given to plaintiffs to conduct discovery into CNET's books and records via a Delaware General Corporation Law Section 220 action. In light of plaintiffs' failed efforts and the continued lack of fruition in this litigation, leave to amend is hard to justify. Nonetheless, leave to amend to plead demand futility or excuse under the *Braddock* test may be sought only as follows. Within fourteen calendar days plaintiffs may file a motion seeking leave to amend, appending the proposed pleading to its motion, and explaining how the specific new allegations meet the *Braddock* test. Please do not ask for extensions. The motion must be brought on a normal 35-day track.

**IT IS SO ORDERED**.

Dated: June 16, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE